## Union Canal Company *against* Antillo.

Certificate of loan issued in the year 1830, by an incorporated company, that there was due from them to A. or her assigns a certain sum, bearing an interest of 6 per cent. per annum, payable quarterly on certain days, the principal to be redeemable, in the option of the company, at any time after the 1st of January 1840; and further stating it was issued under a resolution of the company, and the holder will be entitled to convert the whole of said sum into shares of the capital stock of the company at any time previous to the 1st of January 1840. *Held* that it created an annuity coupled with a power to redeem after the 1st of January 1840, the company alone having the power after that period to determine when the loan shall be repaid, and that action will not lie to compel payment of the principal against the will of the company.

ERROR to the District Court for the city and county of *Philadelphia.*

This action was brought by Charlotte B. D. Antillo against the Union Canal Company. The plaintiff filed a copy of the following instrument

IV. — 70               2 w

[Union Canal Company v. Antillo.]

"Union Canal Loan. Certificate No. 54. These presents do certify that there is due from the Union Canal Company of Pennsylvania to Charlotte B. D. Antillo, or her assigns, the sum of $200, bearing an interest of 6 per cent. per annum, payable quarterly on the 16th days of July, October, January and April, the principal to be redeemable in the option of the company at any time after the 1st day of January 1840. This certificate is issued for part of a loan obtained under a resolution of the Board of Managers of the Union Canal Company of Pennsylvania, passed on the 22d of June 1829, and the holder will be entitled to convert the whole of said $200 into shares of the capital stock of said company of $200 each at any time previous to the 1st day of January 1840.

Witness the seal of the Union Canal Company of Pennsylvania, and the signature of the President and Treasurer thereof, at Philadelphia this 22d day of April 1830.

WILLIAM READ,<br>President.

[SEAL] THOMAS ROBERTS,<br>              Treasurer."

The plaintiff also filed a copy of another certificate, No. 111, dated 7th of April 1830, for $1000, which was in the same terms as the former.

The defendant filed the following affidavit of defence:

"Thomas P. Roberts being duly affirmed, says: I am treasurer of the Union Canal Company, the defendants above-named. Said defendants have a just and legal defence to the whole of the plaintiff's demand in this case, except as hereinafter stated, the nature and character of which defence are as hereinafter set forth. The amount of interest due on the certificates of loan, of which copies have been filed in this case, is altogether the sum of $54 and no more. The interest on said certificate, No. 111, was paid up to the 16th of July 1840; and the interest on No. 54 was paid up to the same time, so that three quarters' interest was due on each on the 16th of April last. Said defendants are advised that the principal sums mentioned in the said certificates cannot be claimed or recovered without the consent of the defendants, being made payable at their option after a particular time."

The court entered judgment for the plaintiff, notwithstanding the affidavit of defence; and damages were assessed at $1271.

Errors assigned:

1. The court erred in giving judgment on the copies of papers filed.

2. In giving judgment for more than the sum due for interest on said papers.

[Union Canal Company v. Antillo.]

3. In giving judgment for more than the interest admitted to be due in the affidavit of defence.

4. In giving judgment, notwithstanding the affidavit of defence.

*Meredith,* for plaintiff in error.
*H. M. Phillips, contra.*

The opinion of the Court was delivered by

Rogers, J.—The intention of the parties, to be collected from the instrument itself, is the only rule of construction. The certificate might have been expressed in more precise and intelligible language, but giving every word of the contract its fair and legitimate meaning, its import seems to be this. In the first place, we must remark that the instrument must be viewed in reference to two periods, before and after the 1st of January 1840, and also as it affects the interest of the borrower and lender. Before the 1st of January 1840, the borrower is entitled to an interest of 6 per cent. payable quarterly, and moreover the right, esteemed a valuable one, is reserved at any time before that date, to convert the loan into the capital stock. The company are prohibited (as we infer) from paying before that time the amount of the loan without the assent of the lender. It is true, there are no express words to this effect, but yet we cannot doubt as to the intention, for although the language of the agreement imports that the money was due immediately, yet the word 'due' is obviously used in the same sense with 'owing;' and we cannot but see that it would be a violation of the spirit of the agreement, that one of the contracting parties should have the power to pay or the other to enforce payment before the time fixed in the certificate. The right to redeem the loan after the period named in the certificate is expressly reserved, and from this the inference is irresistible that it was not designed to resume that right before that time. Nor can it for one moment be admitted that it was designed that the holder should have the power to compel payment of the principal before the year 1840. Until then the company fulfil all their engagements by a punctual payment of the interest, and neither party can affect the amount due or owing, except by a change at the election of the borrower of the principal into stock. The only obligation, therefore, imposed on the company before the period mentioned, is payment of the interest according to the stipulations of the contract.

But how do the parties stand after that time, is the material question. There is due, &c., is the language of the certificate, to the lender the sum of $200, bearing an interest of 6 per cent. per annum, payable quarterly, &c., *the principal to be redeemable in the option of the company at any time after the* 1*st day of January* 1840. This clause, we conceive, must be read as if written to be redeemable *only* at the pleasure of the company. The man-

[Union Canal Company v. Antillo.]

agers, reflecting that it might be inconvenient to return the principal at any precise time, contract for the privilege to redeem it at their pleasure; and hence the peculiar language of the certificate. The principal is to be redeemable at the option of the company, and from this a necessary implication arises, that they shall not be *compelled* to redeem it. The plaintiff's construction strikes these words, which were obviously inserted for the benefit of the company, entirely out of the contract; and it is not easy to see for what purpose they form part of it, if, as is contended, the plaintiff may at any time enforce the payment not only of the interest but of the whole amount loaned. On the latter construction the words " redeemable in the option of the company," are useless, as without them the company would have the right to pay the amount due at that time, and would be prevented from paying it before. When the loan was effected, the disastrous termination of the affairs of the company was not foreseen. It was supposed that, unlike a loan to an individual, there would be no difficulty in realizing the amount loaned by putting it into the market. Stocks of that description, like government scrip, usually have a marketable value, and to meet an unexpected contingency, are easily convertible into cash. These considerations render it less difficult to understand the motives of the parties in entering into the agreement, and certainly go far to explain the terms of it, which would otherwise be unintelligible. Thus, if the rate of interest be reduced, it would be to the benefit of the company to open a new loan, and repay the amount borrowed; but if there should be no change in the value of money, then it was to be at their option to continue the contract on the same terms.

From this it appears that the right in question is an essential part of the agreement, intended for the special advantage of the company, but of which the plaintiff seeks to deprive them by an attempt, contrary to their will, to enforce the payment of the principal. No reason has been assigned for the introduction of the words, " to be redeemable in the option of the company," unless on the supposition that they alone are to determine *when* the loan shall be repaid. Any other interpretation leads to inconsistent rights. It cannot be redeemable at the pleasure of one, and at the same time in the power of the other to compel a redemption. It is of little consequence whether we consider the contract in the nature of a perpetual loan or an annuity coupled with a power to redeem, but we are of opinion that it falls within the latter description. It may be remarked, that if there had been no change in the circumstances of the company, this contest probably would not have arisen. But subsequent events can have no operation on the construction. It must be construed as it was understood when made, and in giving an interpretation to the instrument, we are not at liberty to discard so essential a part of the agreement.

Judgment reversed, and a *venire de novo* awarded.